IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL IMMIGRANT JUSTICE CENTER and KATHRYN O. GREENBERG IMMIGRATION JUSTICE CLINIC AT THE BENJAMIN N. CARDOZO SCHOOL OF LAW, <br><br> Plaintiffs, <br><br> v. <br><br> IMMIGRATION AND CUSTOMS ENFORCEMENT, and DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendants. | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs National Immigrant Justice Center ("NIJC") and Kathryn O. Greenberg Immigration Justice Clinic at the Benjamin N. Cardozo School of Law (the "Clinic" and together with NIJC, "Plaintiffs"), through its undersigned attorneys, as and for their Complaint for declaratory and injunctive relief against Defendants Immigration and Customs Enforcement ("ICE") and the Department of Homeland Security ("DHS" and together with ICE, "Defendants"), hereby state as follows.

**SUMMARY**

1. Plaintiffs bring this action to compel Defendants to disclose records critical to ongoing debates about local participation in federal immigration enforcement and to thereby comply with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Plaintiffs sought records in Defendants' control containing information related to the use and legal effect of ICE "administrative warrants" in connection with (i) intergovernmental service agreements ("IGSAs") between ICE and state and/or local jails and (ii) Warrant Service Officer Agreements between ICE

1

and state and/or local law enforcement. These records are critical to the ongoing public understanding as to the circumstances under which an ICE "administrative warrant" can form the legal basis for state and local law enforcement to arrest and detain an individual for ICE. By refusing to release these records to Plaintiffs, Defendants have violated FOIA. By this action, Plaintiffs seek an injunction compelling Defendants to produce the requested documents in compliance with FOIA, as well as reimbursement of attorneys' fees and expenses resulting from Defendants' ongoing failure to comply with FOIA, with respect to the requested records.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(C)(i), and (a)(6)(E)(iii). Because this action arises under FOIA against an agency of the United States, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3. This Court has jurisdiction to grant declaratory and further necessary or proper relief, including an affirmative injunction, pursuant to 5 U.S.C. §§ 552(a)(4)(B) and (a)(6)(E)(iii), 28 U.S.C. §§ 2201–2202, and Federal Rules of Civil Procedure 57 and 65.

4. Because ICE has failed to make an initial determination with respect to Plaintiffs' FOIA requests within the timeframe set by FOIA, Plaintiffs are deemed to have exhausted all administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C), which provides that a person making a request for materials under FOIA "shall be deemed to have exhausted his administrative remedies with respect to such a request if the agency fails to comply with the applicable time limit provision" of FOIA.

5. Venue lies in this District pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

6.      Plaintiff NIJC, a program of Heartland Alliance, is a tax-exempt, not-for-profit educational and charitable organization under Section 501(c)(3) of the Internal Revenue Code, with its principal place of business in Chicago, Illinois. NIJC is dedicated to ensuring human rights protections and access to justice for immigrants, refugees, and asylum seekers. NIJC provides direct legal services to more than 10,000 individuals each year and advocates for these clients through direct representation, impact litigation, policy reform, and public education. It is crucial to NIJC's mandate that it obtain information regarding the federal government's detention of noncitizens to ensure the protection of civil rights and liberties of detained individuals, where there are virtually no formal mechanisms to ensure appropriate oversight. Through its Transparency Project, NIJC regularly disseminates to the public what it learns from its FOIA requests regarding ICE's policies and practices of arrest and detention.

7.      Plaintiff the Clinic is an educational and advocacy not-for-profit legal practice based at the Benjamin N. Cardozo School of Law, with its office and principal place of business in New York, New York. The Clinic was founded in 2008 to provide pro bono legal representation to indigent immigrants facing deportation, as well as community-based organizations, through both litigation and public policy efforts. In carrying out this work in the interests of its individual clients and the public, the Clinic has established itself as a leader in the dissemination of critically important information about immigration enforcement operations and access to justice to the public. The Clinic frequently obtains and analyzes data from government agencies and publishes studies and evaluations to educate the public about the way in which the U.S. immigration enforcement and adjudication systems function. The Clinic disseminates these materials by

publishing them on websites and in print publications, circulating them on listservs, and sharing them with the media.

8. Defendant DHS is an agency of the United States government and an agency within the meaning of 5 U.S.C. § 552(f)(1).

9. Defendant ICE is the detention and enforcement arm of DHS, is a component agency of DHS, and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

10. Defendants have custody and control over the records that Plaintiffs have requested that they make publicly available under 5 U.S.C. § 552(a)(2).

## STATEMENT OF FACTS

**Statutory Framework**

11. FOIA requires federal government agencies to release requested agency records to the public unless one or more specific statutory exemptions exist. 5 U.S.C. § 552(a)(3)(A).

12. Once a federal agency receives a FOIA request, the agency must respond to the requesting party within 20 working days. 5 U.S.C. § 552(a)(6)(a)(i). The response must contain, at a minimum, the agency's determination of whether to fulfill the request or decline to release the documents under a specific exemption, a fee estimate, and notice of the requestor's right to appeal the agency's determination in the event of an adverse determination. *Id.*

13. If the agency fails to comply with the time limit set forth in 5 U.S.C § 552(a)(6)(A) or extend that time limit pursuant to § 552(a)(6)(B), a plaintiff is deemed to have exhausted any

and all administrative remedies with respect to the FOIA request, and has a right to seek judicial review in a District Court of the United States. *See* 5 U.S.C. §§ 552(a)(4), (6).

14. Upon receiving such a complaint, the court has the authority to ensure compliance with FOIA, including the authority to "enjoin the agency from withholding agency records and order the production of any agency records improperly withheld." 5 U.S.C § 552(a)(4)(B).

15. Plaintiffs hereby seek Defendants' production of records in response to two FOIA requests, which Plaintiffs submitted and ICE received on September 7, 2018 and June 28, 2019, and which ICE has failed to substantively address.

**Factual Background**

16. For approximately the past decade, ICE has dramatically increased the degree to which it uses state and local law enforcement, through various mechanisms, to facilitate—and in some cases directly conduct—federal civil immigration enforcement.

17. One key mechanism through which ICE has effectuated this mission is through systematic use of immigration "detainers." ICE issues these "detainers" to other law enforcement agencies that have arrested a person on criminal charges, requesting that the agency keep the person in custody for up to 48 hours beyond the time at which they would otherwise be released, to facilitate potential civil immigration enforcement action by ICE.

18. This enforcement mechanism has been rejected by numerous courts across the nation, which have concluded that it violates the U.S. Constitution—and in some cases state law—for state and local officers to detain individuals on the basis of immigration detainers. For this and other reasons, hundreds of states, cities, and towns across the nation now decline to hold individuals pursuant to immigration "detainers."

19.     In response, ICE has increasingly turned to three other mechanisms, described below, to attempt to persuade state and localities to arrest and detain individuals for the benefit of federal immigration authorities.

**Administrative "Warrants" and Intergovernmental Service Agreements ("IGSAs")**

20.     First, ICE sends a form (Form I-200 or I-205) that is labeled as a "warrant"—though signed only by one of its enforcement officers and not approved by a judge—to state and local officers when requesting that they arrest and detain an individual for ICE.

21.     Second, ICE enters into IGSAs with localities.  IGSAs are contracts between state or local entities and the federal government for such entities to receive payments for providing bed space for federal immigration detainees, i.e., individuals who are in removal proceedings or have been ordered removed from the United States.

22.     Over the past decade, ICE has increased its use of IGSAs as a way to lease detention space from state and local jails.  Through these agreements, it has gained significant capacity to hold individuals who are being detained for purposes of federal immigration enforcement.

23.     Neither an ICE administrative "warrant" nor an IGSA gives state or local officers the authority to arrest an individual for purposes of civil immigration enforcement.  However, ICE's and the federal government's opaque, at times obfuscatory, and incomplete statements about the scope of authority that these mechanisms purport to give state and local officers to conduct federal civil immigration enforcement have led to widespread misunderstanding and uncertainty among state and local agencies.  This is compounded by confusion on the part of some localities about their own authority to arrest and detain individuals on the basis of administrative "warrants" where there is an IGSA in place.

24. For example, as described *infra* at ¶ 33, as recently as March 2018, ICE has taken the position that state and local law enforcement officers are not authorized to serve administrative "warrants" upon an individual. However, on January 3, 2018, the federal government took a contradictory position in another litigation – arguing that because the Fourth Amendment "allows federal immigration to arrest and detain based on an administrative warrant …, state and local can do the same when they act at the request or direction of the federal government." Memorandum of Law of *Amicus Curiae* The United States of America in *People ex rel. Wells v. DeMarco, Suffolk County Sheriff*, Supreme Court of the State of New York Appellate Division: Second Department, Index No. 2017-12806. A true and correct copy of the Memorandum of Law is attached hereto as Exhibit A.

25. As importantly, while the intense interest in IGSAs and administrative warrants is evident in media reports and public debate on these issues, the federal government has provided partial and at times conflicting representations about the legal authority of local law enforcement to utilize IGSAs and administrative warrants to arrest and detain. This has made it impossible for the public, who through their tax dollars will ultimately bear the costs when localities are held liable, to meaningfully participate in a debate about whether localities should enter into IGSAs with the federal government and how local law officers should respond in the face of ICE "warrants" or other requests to detain individuals beyond the period authorized by state and local law.

26. Additional information about IGSAs and administrative warrants is also critical for policymakers to engage in a meaningful decisionmaking process about local participation in immigration enforcement through these mechanisms. Without access to records such as those that Defendants have failed to provide to Plaintiffs, state and local policymakers will lack essential

information for participating in decisions about the relative risks and benefits of using of local resources to participate in federal immigration enforcement.

**Warrant Service Officer Program**

27.     On May 6, 2019, ICE launched the Warrant Service Officer ("WSO") program. ICE described the WSO program as "a new collaborative program intended for local law enforcement that wish to honor immigration detainers but are prohibited due to state and local policies that limit cooperation with the agency." According to ICE, deputized WSOs may serve administrative warrants and execute arrests on behalf of ICE, permitting localities to hold a noncitizen in custody for 48 hours past the time of his or her scheduled release.

28.     The WSO program involves the federal government training and deputizing local law enforcement to process ICE administrative "warrants." Seen as a workaround to counter so-called sanctuary policies, the WSO program is especially problematic for local communities that have passed ordinances prohibiting exactly this kind of cooperation between local police and ICE. Relying on Section 287(g) of the Immigration and Nationality Act, however, ICE has promoted the WSO program as providing legal authority to make arrests based on administrative "warrants" in sanctuary jurisdictions. *See* Press Release, ICE, "ICE launches program to strengthen immigration enforcement," May 6, 2019 (available at https://www.ice.gov/news/releases/ice-launches-program-strengthen-immigration-enforcement).

29.     Section 287(g) of the U.S. Immigration and Naturalization Act, codified as 8 U.S.C. § 1357(g)(1), requires that any deputizing of state and local law enforcement must be consistent with state and local law. It provides that "an officer or employee of the State or subdivision, who is determined by the Attorney General to be qualified to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United

States may carry out such function at the expense of the State or political subdivision and *to the extent consistent with State and local law*." (emphasis added).

30. Thus, ICE's guidance regarding the WSO program is in conflict with the actual text of the statute upon which it relies. Records about the WSO program are needed so that policymakers, law enforcement, and the public can determine (i) if the WSO program is in conflict with state and local laws and (ii) how the WSO program may affect their authority, if at all, to make arrests pursuant to ICE "warrants" or other requests to detain individuals.

31. Because of the critical need for clarity described above, Plaintiffs submitted two FOIA information requests to ICE, described below, which ICE has chosen to ignore, rather than honor as FOIA requires.

**First FOIA Request**

32. On September 7, 2018, Plaintiffs jointly submitted the First FOIA request ("First FOIA Request") to ICE for records containing information related to intergovernmental service agreements ("IGSAs") between ICE and state and/or local jail or detention facilities, and the use of ICE administrative "warrants" in that context. Specifically, the First FOIA Request seeks records reflecting ICE's position on the scope of arrest and detention authority that administrative warrants provide to state and local authorities and ICE's communications about this issue with state and local authorities. A true and correct copy of the First FOIA Request is annexed to this Complaint as Exhibit B.

33. The First FOIA Request referenced a document (the "Referenced Document"), that was presented by ICE in March 2018 to the Sheriff of El Paso County, Colorado and was later was filed in litigation pending in the District Court for El Paso County, Colorado. *See* Ex. B at 10. The Referenced Document reflects ICE's view that:

a. State and local law enforcement officers are not authorized to serve Forms I-200 or I-205 upon an individual; only ICE has the authority to serve such "administrative warrants."

b. A Form I-200 or I-205 that is sent to a state or local officer is merely a courtesy copy and does not provide authority for the state or local officer to arrest that person.

c. Forms I-200 and I-205 must be personally served by ICE at the moment of arrest; the Forms provide no authority to arrest an individual simply because such Forms are put in that individual's file.

d. An individual detained in a state or local jail is not considered to be detained pursuant to an IGSA unless and until ICE makes a custodial arrest; before ICE makes such a custodial arrest, the individual is considered to be in the custody of the state or local authorities.

34. The First FOIA Request sought disclosure of the following records in the possession of ICE, including sub-offices and district offices thereof:

a. All other portions of the memorandum, guidance, communication, or any other type of record, in which the Referenced Document was located.

b. Any and all other records, including emails and other communications, that have been provided to state or local authorities in New York State that contain, in substance, the information contained in the Referenced Document.

c. Any and all DHS records, including internal memoranda and guidance provided to any type of law enforcement authority that served as the basis for the analysis and positions in the Referenced Document.

35. Plaintiffs requested expedited processing in light of an urgent need for public information about IGSAs and administrative warrants, particularly in light of the ongoing debates about local relationships with ICE and the conflicting statements made by the federal government regarding the authority conferred by administrative warrants and IGSAs.

36. On September 8, 2018, Plaintiffs received an email in which ICE acknowledged the First FOIA Request, assigned it a tracking number, and claimed to invoke a ten-day extension of FOIA's normal twenty-day time period within which agencies must respond to FOIA requests. A true and correct copy of ICE's email acknowledgement is annexed to this Complaint as Exhibit C.

37. On September 10, 2018, Plaintiffs received an email in which ICE asked for clarification regarding "exactly what" records were sought but provided no further explanation. A true and correct copy of the September 10, 2018 request for clarification is annexed to this Complaint as Exhibit D.

38. On September 20, 2018, Plaintiffs responded to ICE's request for clarification by sending a letter, via email, that again described the records they were seeking in the First FOIA Request. A true and correct copy of Plaintiffs' September 20, 2018 letter is annexed to this Complaint as Exhibit E.

39. To date, ICE has not contacted Plaintiffs further regarding the First FOIA Request or provided any responsive records as required under FOIA.

40. Because ICE has failed to substantively respond for more than twenty business days since Plaintiffs submitted their First FOIA Request, Plaintiffs are deemed to have exhausted their administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

**Second FOIA Request**

41. On June 28, 2019, Plaintiffs jointly submitted a FOIA request (the "Second FOIA Request" and together with the First FOIA Request, the "FOIA Requests") to ICE for records related to the WSO program. A true and correct copy of the Second FOIA Request, with transmittal email, is annexed to this Complaint as Exhibit F.

42. The Second FOIA Request sought disclosure of the following records in the possession of ICE, including sub-offices and district offices thereof:

   a. A copy of the Model "Warrant Service Officer" Memorandum of Agreement.

   b. Copies of all WSO agreements entered into between ICE and a state or local law enforcement agency.

   c. A list of all law enforcement agencies that have contacted ICE or that ICE has solicited to enter into a WSO agreement.

   d. All memoranda or guidance (whether internal or external) related to the WSO program, including any legal or policy analysis of the program.

   e. All communications, including electronic communications and documents attached thereto, related to the WSO program.

43. Plaintiffs requested expedited processing light of an urgent need for public information about the connection between the WSO program and ICE's use of administrative "warrants," given the significant confusion as to the authority of local law enforcement, if any, to make civil immigration arrests.

44. To date, ICE has not contacted Plaintiffs regarding the Second FOIA Request or provided any responsive records.

45. Because more than twenty business days have passed since Plaintiffs submitted their Second FOIA Request, Plaintiffs are deemed to have exhausted their administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

### FIRST CAUSE OF ACTION

**Violation of the Freedom of Information Act, 5 U.S.C. § 552,
for Failure to Disclose Responsive Records**

46. Plaintiffs repeat, allege and incorporate, as fully set forth herein, each and every allegation contained in paragraphs 1-45 above.

47. Defendants have stated no legitimate basis for their failure to comply with either of the FOIA Requests.

48. Defendants have not purported to deny either of the FOIA Requests.

49. Defendants violated their obligation under 5 U.S.C. § 552(a)(6)(A) to provide documents or issue a denial within 20 business days of receiving each of the FOIA Requests.

50. Defendants violated their obligation under 5 U.S.C. § 552(a)(3) to promptly produce records responsive to each of the FOIA Requests.

51. Plaintiffs are deemed to have exhausted their administrative remedies with respect to the FOIA Requests pursuant to 5 U.S.C. § 552(a)(6)(C).

52. Plaintiffs have a legal right to obtain the records requested in the FOIA Requests.

53. By failing to release records responsive to the FOIA Requests, Defendants continue to violate Plaintiffs' legal right to access responsive records under FOIA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants as follows:

a. Declaring that Defendants' failure to produce to Plaintiffs records responsive to each of the FOIA Requests violates FOIA, 5 U.S.C. §§ 552(a)(3)(A) and 552(a)(6)(A)(i);

   b.   Ordering Defendants to expeditiously conduct an adequate search for all records responsive to each of the FOIA Requests;

   c.   Ordering Defendants to expeditiously produce to Plaintiffs all non-exempt records responsive to each of the FOIA Requests, and enjoining Defendants from withholding such records;

   d.   Awarding Plaintiffs their reasonable attorneys' fees and other litigation costs related to this action pursuant to 5 U.S.C. § 552(a)(4)(E) and any other applicable statute or regulation; and

   e.   Granting such other relief as the Court may deem just, equitable, and appropriate.

Dated:   New York, New York
         December 4, 2019

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Joshua Dorchak*
    Joshua Dorchak
    Dina R. Kaufman
    101 Park Avenue
    New York, NY 10022
    Phone: (212) 309-6000
    Fax: (212) 309-6001
    joshua.dorchak@morganlewis.com
    dina.kaufman@morganlewis.com

Mark Fleming
National Immigrant Justice Center
224 S. Michigan Ave., Suite 600
Chicago, IL 60604
Phone: (312) 660-1628
Fax: (312) 660-1505
mfleming@heartlandalliance.org

Lindsay Nash
Kathryn O. Greenberg Immigration Justice Clinic
Benjamin N. Cardozo School of Law
55 Fifth Avenue
New York, NY 10003
Phone: (212) 790-0895
Fax: (212) 790-0256
lindsay.nash@yu.edu

*Attorneys for Plaintiffs*